DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

GEORGES KORSUN and OLIVIA KORSUN,

Plaintiffs,

-v.-

GUARDIAN INSURANCE COMPANY,

Defendant.

1:18-cv-00047

OPINION AND ORDER

## MEMORANDUM OPINION AND ORDER

CHERYL ANN KRAUSE, Circuit Judge, sitting by designation.

THIS MATTER is before the Court upon Plaintiffs' Motion to Determine Insurance Coverage (Dkt. #54) and Motion to Set Aside Appraisal Award (Dkt. #53). For the reasons set forth below, the Court holds that Plaintiffs' insurance policy covers only their main house and denies Plaintiffs' Motion to Set Aside Appraisal Award.

### I.    BACKGROUND

This matter arises from the ravages of Hurricane Maria and the various insurance disputes it spawned. Plaintiffs Georges and Olivia Korsun submitted a claim under their insurance policy with Defendant Guardian Insurance Company, ("the Policy") for losses to their property located at 32 Estate Carlton in Frederiksted, Virgin Islands. The Korsuns' claim included damage to both their main house and their guest house, and when Guardian paid less than the amount of loss alleged, the Korsuns commenced this

1

action for breach of contract. But the Policy provided its own process to resolve disputes about the amount of loss: each party must appoint an appraiser to investigate the loss and, in the event the appraisers disagree, a designated umpire submits his own appraisal which becomes binding upon the signature of either appraiser. Guardian moved successfully to enforce this appraisal clause.

The Korsuns and Guardian then retained Henry Sienema and Byron Gilchrest, respectively, as their appraisers. But the appraisers, too, were at loggerheads. For starters, they could not agree on whether the "covered property" under the Policy included the Korsuns' guest house, or only their main house.[1] They also diverged on their appraisals of the Replacement Cost Value ("RCV"), Actual Cost Value ("ACV"), and depreciation for the main house, as well as the appropriate coinsurance penalty to be applied. So, consistent with the Policy's terms, the appraisers submitted their respective award proposals to an umpire, John Robison. Dkt. #53-11; 58-1.

After extensive correspondence with both appraisers, Umpire Robison submitted his appraisal on June 8, 2020 ("the Appraisal Award"). Dkt. #58-6. He concluded that the Policy did not cover the guest house, so the Appraisal Award valued only the main house, but he prepared an alternative award with the guest house in case the Court

---

[1] On September 4, 2019, Guardian filed a Motion to Declare Scope of Covered Property Under Plaintiffs' Insurance Policy. Dkt. #32. This Court denied the motion without prejudice on November 1, 2019, as premature before the appraisal process was complete. Dkt. #38. After the appraisers submitted their proposed awards to Umpire John Robison, Guardian renewed its motion on May 21, 2020. Dkt. #43. The Court again denied the motion and entered an Order requiring Umpire Robison to issue a final award and, "if necessary, make his own determination on what is covered under the insurance policy." Dkt. #47.

determined otherwise.  *Id.*  The Appraisal Award included RCV, ACV, depreciation, and coinsurance values which fell between those proposed by the appraisers.  *Id*.  Guardian's appraiser signed the Appraisal Award the following day, at which point it became binding under the Policy.  Dkt. # 58-7.

On July 14, 2020, the Korsuns filed the Motion to Set Aside Appraisal Award and Motion to Determine Insurance Coverage that are now before the Court.  Dkt. #53, 54.

## II.   DISCUSSION

### A. The Scope of the Insurance Policy

The first question is whether the Policy covers the Korsuns' separate, detached guest house in addition to their main house.  It does not.

Under Virgin Islands law, "[t]he interpretation, construction, and legal effect of an insurance policy is a question to be determined by the court *as a matter of law*."  *James v. Guardian Ins. Co.*, 2015 WL 13579242, at *4 (V.I. Super. Ct. July 14, 2015) (alteration and emphasis in original) (quoting *Certain Underwriters at Lloyds v. Robert Ellis Brown, Inc.*, 2013 WL 132530, at *4 (D.V.I. Jan. 10, 2013)).  Courts addressing that question "should read the provisions within the context of the entire policy and any extensions attached thereto."  *Devcon Int'l Corp. v. Reliance Ins. Co.*, 2007 WL 3124767, at *2 (D.V.I. Oct. 23, 2007) (citing *Coakley Bay Condo. Ass'n v. Continental Ins. Co.*, 770 F. Supp. 1046, 1051 (D.V.I. 1991); 22 V.I.C. § 846).  The "standard to be used in construing the insurance policy" is the "understanding of an ordinary person."  *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I. 1992).

Applying that standard here, the Policy does not include the guest house. The Declarations page to the Policy states in pertinent part: "Insurance is provided against only those perils and for only those coverages indicated below by a premium charge and against other perils and for other coverages only when endorsed hereon or added hereto." Dkt. #54-1. Under the heading "Description and Location of Property Covered," that same Declarations page lists a single "Building" insured for $490,000 and described as a "ONE STORY ONE FAMILY DWELLING OF MASONRY CONSTRUCTION WITH AN APPROVED ROOF LOCATED AT Location: 32 ESTATE CARLTON, FREDERIKSTED, VI 00840." *Id*. The policy also provides that "[i]nsurance applies only to item(s) specifically described in this policy for which an amount of insurance is shown," and that "[b]uilding(s) or structure(s) shall include attached additions and extensions; fixtures machinery and equipment constituting a permanent part of and pertaining to the service of the building." *Id.*

The Korsuns argue this language is ambiguous because it "does not expressly indicate that the 'one family dwelling' only consists of one structure." Dkt. #54 at 6. But "to establish an ambiguity, the insured must do more than proffer a competing *possible* construction of the policy"; the competing interpretation must "reflect[] an objectively reasonable reading of the disputed passage." *New Castle Cnty. v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1182 (3d Cir. 1991) (emphasis in original) (citation omitted).

For this reason, courts will "read policy provisions to avoid ambiguities, if possible, and not torture the language to create them," *Devcon*, 2007 WL 3124767, at *2 (citing *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir. 1982)), but the

4

Korsuns' interpretation would do just that. There is no ambiguity in the Policy's description of the covered "Building" as a singular "dwelling" with a singular "roof." Dkt. #54-1. Nor is there ambiguity in the Policy's express provision that only attached structures are included. *Id*. The Court declines to conjure an ambiguity where none exists.

Whatever the Policy states, the Korsuns' protest, extrinsic evidence would demonstrate that the parties entered into it with a shared understanding that the guesthouse would be covered. But "[w]hen the parties to an agreement reduce their understanding to a writing that uses clear and unambiguous terms, a Court should look no further than the writing to give effect to that understanding." *Coakley*, 770 F. Supp. at 1050 (quoting *Brokers Title Co. v. St. Paul Fire & Marine Ins. Co.*, 610 F.2d 1174, 1178 (3d Cir. 1979)). Moreover, where—as here—a contract's terms are unambiguous, "parole evidence of prior inconsistent terms or negotiations is inadmissible to demonstrate intent of the parties." *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994). Because the Court finds no ambiguity in the Policy, resort to extrinsic evidence is "unnecessary and even inappropriate." *McDonald v. Davis*, 2009 WL 580456 at *6 (D.V.I. Mar. 5, 2009).

In sum, the Court construes the Policy "according to its plain language," and holds that the guest house is not covered. *Devcon*, 2007 WL 3124767, at *3.[2]

---

[2] The Korsuns' alternative arguments are similarly unavailing. The doctrine of ratification is not applicable because York's payment recommendation was not a coverage determination, nor was it taken on Guardian's account or affirmed by Guardian. *See* Restatement (Second) of Agency §§ 82, 83 (1958). Promissory estoppel is likewise

5

## B. The Appraisal Award

The next question is whether the Appraisal Award should be set aside. The scope of this Court's review of the Award is circumscribed: An appraisal award is presumptively valid, and a court "cannot substitute its own decisionmaking for that of the appraisers." *Ambient Grp., Inc., v. Cont'l Ins. Co.*, 1994 WL 326602 at *2 (D.V.I. March 2, 1994). Instead, an award may be set aside only for "fraud, mistake, misfeasance, collusion, prejudice or partiality." *Id.*

The Korsuns argue that this standard has been met for three reasons. First, they contend that, because interpretation of the Policy is a matter of law to be determined by this Court, Umpire Robison exceeded his authority by determining that the guest house was not covered. Dkt. #53 at 1. Second, they argue that the Umpire exceeded his authority by reaching issues on which the appraisers had already agreed. *Id.* at 1-2. Third, they assert that Guardian's counsel improperly interfered by preventing Gilchrest from signing an award to which the appraisers had agreed. *Id*. at 2. For the reasons discussed below, however, these arguments are unavailing.

### 1. The Appraisal Award Correctly Excluded the Guest House

The Korsuns are correct that "the interpretation, construction and legal effect of an insurance policy is a question to be determined *by the court* as a matter of law." Dkt. #53 at 9 (emphasis in original) (quoting *Coakley*, 770 F. Supp. at 1050). And the Court has

---

inapplicable where, as here, "an unambiguous contract exists that covers the issue." *Roy v. Banco Popular de Puerto Rico*, 2018 WL 4178704 at *10 (V.I. Super. Ct. Aug. 29, 2018) (citation omitted).

now made that determination: The terms of the Policy are unambiguous and cover only the main house, not the guest house. But while it is a Court's role to interpret the legal meaning of an insurance policy, it is unquestionably an umpire's role to conduct an independent appraisal consistent with a policy's terms. Umpire Robison did precisely that, and even prepared an alternative award in the event this Court determined that the guest house was included. The Umpire thus did not exceed his authority or err by excluding the guest house.

2. **Robison Did Not Reach Issues Outside the Scope of His Authority Under the Policy**

The Policy provides in relevant part that the parties' respective appraisers

> . . . shall [] appraise the loss, stating separately the actual cash value and loss to each item; and failing to agree, shall submit *their differences, only,* to the umpire. An award, in writing, so itemized, or any two when filed with this Company shall determine the amount of actual cash value and loss.

Dkt. #53-1 at 2 (emphasis added).

The Korsuns contend this language limits an umpire's role to deciding only those issues upon which the appraisers have not agreed. Dkt. #53 at 11. And because they maintain that, prior to October 17, 2019, the appraisers agreed on the value of the loss and disagreed only as to the coinsurance penalty, the Korsuns argue the Umpire exceeded his authority by making an independent appraisal of the overall loss. *Id*. at 11-12.

The Korsuns offer no support for this constricted view of an umpire's authority, and the case law is to the contrary. Courts interpreting similar language have held that "an agreement between any two of the three participants in the appraisal process is valid

7

and legally binding," *Ambient Grp., Inc. v. Cont'l Ins. Co.*, 1994 WL 326602 at *2 (D.V.I. March 2, 1994), and have characterized an umpire's role as that of a "third appraiser, who together with at least one of the two original appraisers may effect a binding award," *Atlas Constr. Co., Inc. v. Ind. Ins. Co., Inc.*, 309 N.E.2d 810, 816 (Ind. Ct. App. 1974).  In other words, "the umpire must determine his own itemized award as one of 'any two,' instead of merely agreeing with one of the appraisers." *Guardian Gen. Ins. Ltd. v. Caribbean Food Servs., Inc.*, 2016 WL 9224992 at *12 (Sup. Ct. V.I. Oct. 24, 2016).

Even if an umpire's role were limited to specific items of disagreement, however, the Appraisal Award would still be proper because the record does not reflect any agreement between the appraisers—only a series of disagreements throughout the appraisal process.  After Sienema submitted his proposed award to Umpire Robison on December 20, 2019, for instance, Gilchrest expressed his disagreement as to the property's valuation, repair costs, and depreciation.  Dkt. # 58-3.  Likewise, after Gilchrest submitted his proposed award on January 4, 2020, Sienema responded with fifteen paragraphs detailing his disagreement with nearly every aspect of the proposed award. *Id.*  The ongoing correspondence between Umpire Robison and the appraisers demonstrates that these differences persisted throughout Robison's appraisal.  Dkt. # 58-4; 58-5; 58-6.

Indeed, the only evidence of an agreement cited by the Korsuns are two email exchanges from October 2019.  But those emails simply reflect that Sienema followed up on his proposed award, and neither includes any statement from Gilchrest confirming his

8

agreement. Dkt. # 53-11; 53-13. In any event, had the appraisers reached a tentative agreement at some point, it was short lived, as the proposed awards ultimately submitted to the Umpire clearly diverge as to the RCV, ACV, depreciation, and coinsurance values. Robison thus acted well within the scope of his authority by independently determining these values.

### 3. There is No Evidence of Interference with the Appraisal Process

The Korsuns' final argument is that Guardian's counsel interfered with the appraisal process by preventing Gilchrest from signing the appraisal award to which he allegedly agreed with Sienema in October 2019. ECF #53 at 13. As evidence of this agreement and interference, the Korsuns cite an email from Gilchrest saying that he "ran [Sienema's proposed award] by the opposing council [sic], and they don't want us to sign anything until the Judge makes a decision." Dkt. #53-13. This email, however, does not establish either any agreement or any interference by Guardian's counsel. What it does establish is that Gilchrest's reticence was based on a desire to await this Court's resolution of the then-pending motion to determine the scope of the Policy.

## CONCLUSION

For the reasons discussed above, this Court has determined, as a matter of law, that the Policy covers only the main house and not the guest house, and as a mixed question of law and fact, that there is no basis upon which to set aside the Appraisal Award. The Korsuns' Motion to Determine Insurance Coverage is thus GRANTED and resolved in favor of Guardian, and the Korsuns' Motion to Set Aside Appraisal Award is

DENIED. The Parties shall submit a joint status update and proposal for next steps in this case on or before **November 12, 2021.**

      SO ORDERED.

Dated:   October 22, 2021

                                                            CHERYL ANN KRAUSE
                                                             United States Circuit Judge